1   ALEXANDER E. WOLF (SBN 299775)
    awolf@milberg.com
2   **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN PLLC**
3   280 South Beverly Drive, Penthouse
    Beverly Hills, California 90212
4   T: 872.365.7060

5

6   *Attorneys for Plaintiff and the Putative Class*

7

8                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
9

10
    GRAHAM WALDO, individually and on
11  behalf of all others similarly situated,           Case No.:

12                              Plaintiff,             **CLASS ACTION COMPLAINT**

13                                                     **JURY TRIAL DEMANDED**
            v.
14

15  BLACK & DECKER (U.S) INC.,

16                              Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

Plaintiff Graham Waldo ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Black & Decker (U.S.) Inc. ("Defendant" or "Black & Decker"), and alleges on personal knowledge, investigation of his counsel, and information and belief as follows:

## INTRODUCTION

5.     This is a class action brought by Plaintiff on behalf of himself and other similarly situated persons who purchased Black & Decker String Trimer/Edger model numbers BESTA510 and GH900, and all other substantially similar string trimmers with the same automatic feed spools (the "Products"), for personal use and not for resale.

6.     The Products all suffer from an identical defect in design. Specifically, the Products have a dangerously defective auto feeding spool and sensor, posing a significant safety hazard for consumers.  As a result of the defect, too much spool can be advanced, and pierces of trimmer string can come loose during use and become airborne projectiles, posing a laceration hazard to users as well as bystanders. Such a design defect is extraordinarily dangerous and has rendered the Products unsuitable for their principal and intended purpose.

7.     Indeed, many consumers have suffered physical injuries as a result of this defect, including Plaintiff, who suffered a painful and deep laceration to his leg.

8.     Defendant has not recalled the Products or offered any other program to reimburse or assuage users who are at risk of harm.

9.     As a result of Defendant's misconduct and omissions, Plaintiff and putative Class members have suffered injury in fact, including economic damages.

10.     Plaintiff brings this suit to halt Defendant's unlawful sales and marketing of the Products and for economic damages sustained as a result. Given the large quantities of the Products sold in California and nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining

needed relief for those affected.

## PARTIES

11.     Plaintiff Graham Waldo is and was at all times relevant to this matter a resident of the State of California residing in San Pedro, in the county of Los Angeles. Plaintiff is a citizen of California.

12.     Defendant is a corporation organized under the laws of Maryland, having a principal place of business at 701 East Joppa Road, Towson, MD 21286. At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, marketed, and sold the Products nationwide, including in California.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and Defendant are citizens of different states.

14.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965 because Defendant maintains minimum contacts with this state, and intentionally avails itself of the laws of the United States and this state, by conducting a substantial amount of business in California. Defendant continuously and systematically places goods into the stream of commerce for distribution in California, sells the Products to individuals in California, and wholesales the Products to retailers it knows will resell the Products at retail to individuals in California. Because of Defendant's conduct as alleged in this lawsuit, the Products were sold to and purchased by individuals in this State.

15.     For these same reasons, venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims

herein occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

### A.   The Defect

16.   Defendant is the manufacturer, distributor, and seller of power and hand tools.  Among the various tools manufactured and sold by Defendant are the Products at issue—the Black & Decker String Trimer/Edger model numbers BESTA510, GH900, and all other string trimmers with the same defective automatic feed spools.

17.   The Products contain a safety defect resulting in an unreasonable risk of physical harm, namely, a dangerously defective auto feeding spool and sensor.  As a result of the defect, too much spool can be advanced, and pieces of trimmer string can come loose during use and become airborne projectiles, posing a laceration hazard to users as well as bystanders.  The defect is substantially likely to materialize during the useful life of the Products and many users have reported laceration injuries (or near injuries) resulting from the defect.

18.   The Products are substantially similar: they are all string trimmers and contain the same dangerously defective auto feeding spool and sensor resulting in too much spool being advanced and becoming airborne projectiles.

19.    The defect at issue here involves a critical safety-related component, and it is unsafe to operate the Products as designed.  The auto feeding spool and sensor are also central to the performance of the Products. Absent a functioning feeding spool, the Products are incapable of use and are worthless.

20.   Industry standards applicable to power tool string trimmers require that trimmers be designed to avoid excess advancing of spool past the safety guard. This can be accomplished in many ways, including the manual "bumping" method of advancing spool. This alternative, feasible design has been available for decades. The Products' auto feeding spool, however, advances far more spool than necessary to adequately trim vegetation and is therefore unsafe to use.

21.   Additionally, consumers reasonably expect that string trimmers are safe

4

for their intended purpose—trimming vegetation. Consumers would not anticipate that a product specifically made for trimming vegetation and marketed as such is designed in a manner that could seriously injure themselves with normal, everyday use.

22.   The safety defect renders the Products unfit for the ordinary purpose they are used, which is to safely and consistently trim vegetation.

23.   The safety defect is present in all Products at the time of sale because it is inherent in the design of the Products and is present when the Products come off the assembly line.

24.   Had Plaintiff, Class members, and the consuming public known that the Products were defectively designed and were substantially certain to prematurely fail, they would not have purchased the Products at all, or on the same terms for the same price.

**B.**   **The Safety Risks to Users Associated with the Use of the Products Render Them Worthless or Diminished in Value**

25.   As a result of the safety risks to users associated with the use of the Products, together with Defendant's concealment and omission of these risks from the date they were first reported to Defendant or discovered by Defendant and continuing through the present, as the Products were not recalled, the Products have been rendered entirely worthless or, at the very least, have been substantially diminished in value.

26.   The known safety risks to users of the Products, described above, have rendered the Products worthless. If users choose to discontinue using the Products for fear of injury (or repeat injury), they must pay for another expensive replacement product.

27.   Rather than recall the Products or even instruct users to place them away, Defendant continues to sell the products and market them as usable.

**CLASS ACTION COMPLAINT**

28.     In so doing, Defendant places the blame and burden on parents for purchasing its dangerous Products instead of shouldering any responsibility for the defect whatsoever. In other words, Defendant is actively concealing the safety defect.

29.     If Defendant disclosed the danger presented by the Products, demand would quickly drop, which would cause the market price of the Products to plummet. Thus, due to Defendant's concealment and omissions, Plaintiff and class members paid a price premium and sustained economic injuries.

## C.     Defendant Knew About the Defect Yet Provided No Warning

30.     Defendant has never warned consumers regarding the safety risks of projectile string and resulting laceration through regular use of the Products.

31.     However, Defendant was aware of the design defect and the resulting risk of physical injury since at least August 2014.

32.     The United States Consumer Products Safety Commission ("CPSC") operates a website where consumers can post complaints about unsafe products and provide details about any incidents they experienced. Defendant regularly receives and monitors consumer complaints submitted to the CPSC and responds to such complaints and inquiries. The CPSC also automatically informs manufacturers whenever they receive a complaint about a physical danger.

33.     At least two complaints of this defect and injury risk have been made to the CPSC for model GH900—which is virtually identical to the BESTA510 and has the exact same defect, design, and material features.

a.     In a report dated August 30, 2014, a user submitted the following complaint:

> The Black and Decker 6.5 amp string trimmer is dangerous. The *mechanism that feeds the string malfunctions* and *sends out a stream of string*. Pieces of string are *propelled* quite a distance by the device and *cause quite a sting when hitting one's legs*.

The pieces of string could easily **damage one's eyes**.[1]

b.     In a report dated July 19, 2018, a user submitted the following complaint:

> I was operating a Black+Decker GH900 weed trimmer and edger. I had been operating the equipment on the incident day for approximately 1.5hrs in the "edger" mode. When I switched the equipment to the trimmer mode the rpm increased as designed but the **auto-line-feed system unraveled** the entire remaining (approximately 10 feet) line in an **uncontrolled manner**. This caused the line to exceed the protection of the guard and **break off in the direction of the operator** (myself). A few pieces struck my leg causing non-serious lacerations. No professional medical treatment was needed, only first aid cleaning and bandaging. I have owned this equipment for approximately one year. The auto-feed-system is known for using a lot of line but this was the first incident that **failed to stop feeding such a large amount, bypassing the guard, and that caused a noticeable injury**.[2]

34.     In addition to receiving safety complaints from the CPSC, Defendant knew about the defect through reviews posted on its own website and third-party retailer websites. No less than fifty consumers posted product reviews about the Products' defective spool-feeding system and sensor, resulting in too much spool being advanced and pieces of trimmer coming loose during use and becoming airborne projectiles, posing a laceration hazard to users as well as bystanders. The volume of negative reviews raising the exact same defect—which Defendant often responds to—is unusually large and is indicative of a widespread problem.

35.     Exemplar reviews are shown below for model BESTA510 on Amazon.com.

---

[1] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1426057.
[2] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1777612.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

&times;



Kindle Customer

★☆☆☆☆ **Safety Risk**

Reviewed in the United States on July 28, 2020

There is a tiny piece that sits under the string spool that came out, without my knowledge. I put in a. replacement spool and turned it on the string came out in extra long length , this caused numerous 1 to 2 inch cuts from ankle to knee on both legs. I have been unable to locate a replacement part
I placed this review last year but wanted to caution those who buy it this year!

Images in this review



8

**CLASS ACTION COMPLAINT**

# Customer Review

 vlnplyr

⭐☆☆☆☆ **Great for slicing open your legs**

Reviewed in the United States on June 5, 2020

Style: String Trimmer  |  **Verified Purchase**

Not sure how the reviews are so positive as this trimmer is hot garbage. My B&D that I bought 15 years ago finally gave up, so I figured I'd show some brand loyalty. That was mistake #1.

Mistake #2 was expecting this to perform the same as my old one. Easy-feed line - great concept, terrible execution. I now have an open wound on my left leg (through my sock) from trimmer line that advanced too fast, essentially rolling out 8-12 inches at a time and destroying anything in its path.

Mistake #3 was thinking it was a one-time issue. Kept using the thing, and ended up with a gash in my right leg too. Lovely.

My tiny suburban yard is now 2/3 of the way edged, with a whole spool of line gone. At this rate I'll be spending money on trimmer line like some people do on ink cartridges!

Needless to say, B&D missed the mark, and this time I won't make the same (3) mistakes again. Bye bye B&D.



**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Customer Review

 Steve

⭐⭐☆☆☆ **Another auto-feed failure with BLOOD!**

Reviewed in the United States on September 16, 2021

Style: String Trimmer | **Verified Purchase**

I really liked the design features of this trimmer. The guide wheel is brilliant! It works great for keeping your distance while trimming against a hard object, like walls or edging bricks. It also works great when you are using the trimmer as an edger.

The not so great is the poor designed auto-feed mechanism. My trimmer worked great for 1 and a half seasons then the auto-feed failed. It would, out of the blue start feeding excessive line, which then gets cut off by the line trimmer, becoming a projectile aimed straight for your shins. I stopped trimming, removed the spool and noticed the auto-feed ratchet had come off its post. Reseated the ratchet on its post and began trimming again. About 5 feet further down the fence line, the auto-feed failed and once again, I got trimming line stuck under my skin on my shin. I managed to finish the job but with 5 puncture wounds in my legs.

As much as I like the features and design, I can not recommend this trimmer. It can and will draw blood.

# Customer Review

 Virgil Lloyd

⭐☆☆☆☆ **BUY AT LEAST A DOZEN SPOOLS OF STRING…. YOU'LL NEED THEM ALL..!**

Reviewed in the United States on April 30, 2021

Style: String Trimmer | **Verified Purchase**

THE FEED ON THE SPOOL LITERALY RUNS IT OUT OF STRING AND THROWS ROCKS AND STRING BITS EVERYWHERE ….. A WASTE OF MONEY ON THIS ONE..! WHAT DOESN'T WRAP AROUND THE SPOOL ALL AT ONCE, GETS CUT INTO BITS CONSTANTLY… LITERALLY INJURED MY WIFE WITH THE STRING BITS AND EVERYTHING ELSE IT THREW….!

# Customer Review

 Allan A. Makalintal

⭐☆☆☆☆ **Feed line malfunction**

Reviewed in the United States on December 11, 2021

Style: String Trimmer | **Verified Purchase**

The cutting line feed system keeps feeding out causing shrapnel of the broken line flying through the air and caused me some injuries on my lower leg. I did read every page of the manual and followed every step for set up and use to make sure I wasn't missing anything. I was not, I even ordered a replacement which did the exact same thing.

**CLASS ACTION COMPLAINT**

# Customer Review

 Brian

⭐☆☆☆☆ **Don't Buy This**

Reviewed in the United States on June 16, 2022

Style: String Trimmer   |   **Verified Purchase**

The auto feed on this item is the worst. It's always pushing out more line. So much line that it doesn't cut off the excess... so it feeds more line out. When it finally cuts the excess line, long chunks will fly back at you. Trimmed the yard twice, this went through a whole roll of string.
Don't get this one, pay a little more and get the one with the user controlled string feed button at the top of the handle.

# Customer Review

 Darlene

⭐☆☆☆☆ **Danger**

Reviewed in the United States on July 6, 2022

Style: String Trimmer   |   **Verified Purchase**

I bought this for an easy to use tool in between our lawn company coming. My husband told me under no circumstances was I to use it. The plastic unravels itself & breaks easily. He had 3 cuts on his face and more then a handful on his legs. This should not be able to be sold here

# Customer Review

 TAMIE

⭐☆☆☆☆ **Poorly designed dangerous the line feeder Very wasteful**

Reviewed in the United States on August 15, 2022

Style: String Trimmer   |   **Verified Purchase**

It's not designed well it feeds out the line is dangerous very large line comes out and then when it cuts it flies out and dangerous Pieces about 2 inches long at you

**CLASS ACTION COMPLAINT**

# Customer Review

 Barbe

★☆☆☆☆ **Does not work properly!**
Reviewed in the United States on June 29, 2023
Style: String Trimmer | **Verified Purchase**

I purchased this to replace one just like it that was years old. This is horrible as the string keeps coming out way too long and the cutter does not cut it off. My leg is all torn up from being hit by the long piece of string. I just got this last week and threw away the box because I knew my last was just old and I knew this new one would be great. No it is not!!! I can't return it with no box so it is just trash now and I really can't afford another one. I am so upset as I do my yard work every week and do not know what to do now. Who can afford to just trash it and have nothing to trim with this day and time? I will never buy another one of these. I am very upset as I have blood marks all over my leg.

# Customer Review

 Amazon Customer

★☆☆☆☆ **POS**
Reviewed in the United States on August 28, 2023
Style: String Trimmer | **Verified Purchase**

Honestly doesn't deserve one star. Line automatically feeds when you don't need it and won't feed when you need it. Lines gets too long and throws trash/debris at you. Better off with something from harbor freight. Save your money and legs.

2 people found this helpful

36.     Exemplar reviews are shown below for model BESTA510 on HomeDepot.com, including Defendant's responses thereto.





**CLASS ACTION COMPLAINT**

★☆☆☆☆                                                                    Oct 2, 2021

**Dangerous tool**

This trimmer has an AUTOMATIC feed system which sounds great in marketing terms but is DANGEROUS because it randomly feeds string causing all sorts of trouble: The tool suddenly jumps wildly, or randomly flings nearby stones which act like bullets.

by LEDbuddy

---

★☆☆☆☆                                                                    Sep 24, 2022

**Unreliable sensor**

The line feeding sensor kept continually feeding more and more line when it should have stopped.

by Jon_

> **Response from Customer Service**                                      Hide
>
> Sep 28, 2022
>
> Hello Jon. We appreciate your feedback on the trimmer and are sorry to hear about the issue. This is not the kind of performance we expect from our products and would like to speak to you about this issue so we can assist you. Please email me at wecare@sbdinc.com and reference case #5571647. Thank you, Maria BLACK-DECKER Social Rep.

---

★☆☆☆☆                                                                    Jul 14, 2023

**Uses up line like no tomorrow**

If you hit anything other than one blade of grass at a time, this will throw line off to who knows where... spend a little extra and get something else.

by John

> **Response from SBD_Product Expert**                                    Hide
>
> Jul 17, 2023
>
> Hello John.
> Thank you for your feedback regarding Trimmer. I am sorry to hear you are unhappy with this product and would be more than happy to assist you with a resolution. If you would like further assistance, please email support at wecare@sbdinc.com and reference ticket (#7677074) so all information is easily available for the agent to assist you further.
> Thanks, Maria BLACK+DECKER

13

**CLASS ACTION COMPLAINT**

37.     Exemplar reviews are shown below for model BESTA510 on BlackandDecker.com.[3]

**Terrible…Do not buy this product.**

LoBo

5 years ago

In my opinion this is a terrible product. Used a whole spool on 1/3 of my yard. Advanced several feet of spool and wrapped around my leg causing several cuts and bruises on my leg. I do not recommend buying this product.

Joe L

4 years ago

I just bought it and I have a small yard and the automatic Line Feed is the biggest pile I've ever seen. half my yard went through a whole spool. If it feels a little tension it'll automatically feed it and whip trimmer string all over. I'm looking into seeing if they have the old school feed yourself had for it. Skip over this by

★★

**dangerous and costly to replace spools**

yardwanderer1

4 years ago

The trimmer works well for one season. The black handle moves out of it's locked position often, the line does not always cut against the metal cutting edge after popping the spool for more string; the line continues to feed out while unspooling, and then cuts you across the shins. Ouch! On top of this, the replacement spools cost a lot of money. Think about how much you are nickel and dime for printer cartridges, and you will understand.

38.     Reviews on the Amazon.com and HometDepot.com listings for the model GH900 string trimmer contain similar complaints about the defect. Exemplars are shown below.

★★★★★                                                                              Jun 26, 2023

**Huge liability**

I had been using this product for a while and then it automatically auto Fed way too much line, causing it to throw rocks and debris that my legs ripping them open. After researching Black & Decker recalled they were auto feet edgers years ago, as there were so many injuries caused by faulty feeds. After calling, Black & Decker, explaining my injuries, they simply asked me to return the editor so that they could examine it. I am proceeding legally as this product negligence must stop.

by Lacey

Response from SBD_Product Expert                                                    Hide

Jun 27, 2023

Hello Lacey, thank you for taking the time to give us your feedback. I am so sorry that you had a negative experience with our Customer Service Department. Our goal is the total satisfaction of our customers, and to provide a positive experience. We would like to get more detail about your experience. Please contact us at WECARE@sbdinc.com and reference ticket 7533928 so we have all information available from your review.

Thanks, Deeris BLACK+DECKER

---

[3] https://www.blackanddecker.com/products/besta510.

I don't know what's worse the trimmer throwing debris and string left and right, or the exploding bearings.... Maybe it's the customer service. This thing has been a disaster and trying to speak to someone has been even worse... I bought the second trimmer thinking the first one was defective, nope turns out black and decker makes pretty terrible products. Good luck.

by Chof13

> **Response from SBD_Product Expert**                                    Hide
>
> May 9, 2023
>
> Hello Chof13, I appreciate your feedback. I would like to speak to you about the experience you had with GH900 14 in. 6.5 AMP Corded Electric Single Line 2-in-1 String Trimmer & Lawn Edger with Automatic Feed and POWERDRIVE. Please contact support at WECARE@sbdinc.com and include a brief description of the issue you are having along with your contact information along with your contact information and reference ticket # 7097592. Thanks, Tana BLACK+DECKER

★★★★★                                                                  May 16, 202°

**Junk out of the box**

I bought two of these and only used each two to three times and the line shoots out none stop. Flying plastic line chewed up my legs big time. Wasted alot of trimming line. I just bought the second one two months ago so I researched online the issue. I was informed to buy and replace the small component inside the housing that supposed to control the line release. I ordered the part, waited a week for it to arrive, installed the new part as instructed and nothing was fixed. Still not working properly. I am sooooo done with Black and Decker products. Home Depot needs to discontinue this brand. Too much money to spend on trash for the landfill.

by KB

> **Response from SBD_Product Expert**                                    Hide
>
> Jun 8, 2021
>
> Hello We appreciate your feedback. We would like to speak to you about the experience you had. Please contact support at WECARE@sbdinc.com and include a brief description of the issue you are having along with your contact information. We look forward to hearing from you. Thank you BLACK+DECKER

★★★★★                                                      Jun 16, 2020         Verified Purcha

**The problem with the product is the line feed it's to long and I assume the spool was a really sh...**

The problem with the product is the line feed it's to long and I assume the spool was a really short one that came with the product I was trimming some high grass by a wooded area in my back yard 2 days ago and what was left of the line flew off the spool and hit me right in my eye and knocked to the ground am very lucky I still have an eye Louis Serin

by UnluckyLouie

**CLASS ACTION COMPLAINT**

★☆☆☆☆                                                                            Jul 18, 2020

**waste of money**

I used this thing for maybe 20 minutes. I went through 3 spools of line ($8 each). About all I got out of the deal was a bad mood and a number of bleeding wounds from the chucks of line it shoots off at high velocity. It's supposed to auto adjust the line length, but the auto adjust mechanism is trash and the line spools are VERY expensive. My advice, if you're thinking about buying this, just throw $40 out your car window and keep driving. You'll get just as much done and end up far less frustrated.

by Jules

> **Response from SBD_Product Expert**                                          Hide
>
> Jul 27, 2020
>
> Hi Jules
> We appreciate your feedback on the GH900 and are sorry to hear about the issue you are having with your product and the wounds it cost. This is not the kind of performance we expect from our products and would like to speak to you about this issue so we can assist you in resolving this to your satisfaction. Please email me at wecare@sbdinc.com and reference case #11933906. I look forward to hearing from you.
> Thank you
> Deeris
> BLACK+DECKER

★☆☆☆☆ **Cannot use this thing**
Reviewed in the United States on June 9, 2023
Verified Purchase

I used this as an edger first and it was just okay. I kept the trigger pulled instead of starting and stopping a lot so it wouldn't use a lot o line. Then I flipped it over to use as a trimmer. Completely useless! It just kept sending out line, cutting it off and throwing it at me. I ha 10 cuts/welts on my legs within two minutes. And yes, I was wearing jeans. They have done something to the new weed whackers that makes them completely useless. Don't buy this.

Helpful | Report

★☆☆☆☆ **Hazardous piece of junk, with the cuts on my legs and face to prove it.**
Reviewed in the United States on May 8, 2016
Verified Purchase

I very reluctantly bought this string trimmer after my Toro Trimmer finally broke after ten years of use. I had used a Black and Decker Hog trimmer before and found it largely to be a plastic piece of junk. So, I was very hesitant to buy this after the junk I made the mistake of buying before. This trimmer worked well the first time. The second time I used it, which was just today, I have no fewer than three painful cuts: one to my face and two on my leg, since this trimmer would not auto trim the line and instead wound out a string much larger than the guard. It hit who knows what in my fence and edging trim and slung the debris into my face. I now have three bleeding cuts on myself from this hazardous piece of junk and it is assembled according to the package instructions. I did not purchase this item through Amazon, instead at my local Menard's store and if I can find the original reipt this piece of junk will go back for retur It is not a safe item for anyone to use in my opinion. I have attached a photo of the string[ere it is a [pntly too long and will not automatically cut off. My suggestion is to not waste your cash and buy a more safe and reliable trimmer than Black & Decker has made in this waste of money.

9 people found this helpful

**CLASS ACTION COMPLAINT**

 Alicia Stevers

★☆☆☆☆ **This trimmer is the worst. It plowed through an entire spool of string ...**

Reviewed in the United States on June 12, 2015

Verified Purchase

This trimmer is the worst. It plowed through an entire spool of string in one run and I wasn't even done doing my front and back yard. That's like 12 feet of string in 30 minutes! I was cutting with the head in the horizontal position through soft grass, no rocks or hard surfaces, and yet the trimmer kept continuously releasing string. Every few seconds I'd hear the sound of more string being released and smacking on the guard until it would finally lop off the extra and then a few seconds later proceed to release more string for no reason. The worst part of it all was that the extra bits of string that were being lopped off whacked my shins. I now how at least a dozen painful cuts on my shins from the bits of string hitting me. I've owned a trimmer before and had no issues with it. This is an auto-feeding piece of garbage and I sent it back to the dark pit of hell wence it was fashioned.

mksotlo

★☆☆☆☆ **Beautiful beast**

Reviewed in the United States on September 19, 2016

Verified Purchase

This may be a decent trimmer. It looks good,seems built well enough and you really can't beat the price. Unfortunately in the year I've had it the string feed mechanism has never worked properly. From New it sprayed string. So I did a You tube fix, no good. Maybe it will work with the pre cut strings. Well I don't think this was a very good deal . In the end you get what you pay for.UPDATE. This trimmer is useless to me . Let me say I've always paid a lawn guy and have never used a trimmer of any sort. So when I got this 88.dollar two stroke Murray trimmer it just blew me away. Wow now this is amazing to me, what a sorry waste of money . I'm glad it was so bad,or I may have never known the joy of a real trimmer. I'll use the electric motor for something.

8 people found this helpful

★☆☆☆☆ **Piece ofJunk**

Reviewed in the United States on September 25, 2021

Verified Purchase

Complete piece of junk. I used it twice. The string kept coming out. It had no control over the string. I didn't want t chance a major laceration on my legs. I got frustrated and smashed this piece of just junk. Going with a Craf



One person found this helpful

Helpful    |    Report

**CLASS ACTION COMPLAINT**

39.     Not only does the number of complaints over the course of several years demonstrate that Defendant was on notice of the defect, but the substance of the complaints shows that consumers were surprised, frustrated, and disappointed with the poor build quality of the Products, and would not have purchased the Products had the defect been disclosed.

40.     Defendant would have seen the above-described warnings on its own website and third-party retailer websites. Online Reputation Management (ORM) is now a standard business practice among major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. ORM involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation. Many companies offer ORM consulting services for businesses.

41.     Like most companies, Defendant cares about its reputation and regularly monitors online customer reviews because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics. One and two-star reviews like those displayed above would be particularly attention-grabbing for Defendant's management because extreme reviews are often the result of material problems. As such, Defendant's management knew about the above-referenced consumer complaints shortly after each complaint was posted on Defendant's company website and third-party retailer websites.

42.     Additionally, Defendant is experienced in designing and manufacturing power tools such as the Products. As an experienced manufacturer, Defendant conducts pre-sale and post-sale safety testing to verify the safety risks posed to users of the Products. On information and belief, Defendant discovered this safety risk during testing both before and after publicly releasing the Products for sale, but made a business decision not to take action, including redesigning and

recalling the Products.

43.     Finally, Defendant also would have had notice of the defect as a result of product warranty claims. Before accepting a return or performing a repair, Defendant's policy is to ask each customer for a description of the request and to keep track of the reasons given. Descriptions provided with returns and/or repair requests of the Products therefore would have disclosed the defect.

44.     In sum Defendant has known of the safety defect and its associated manifestations and damage through (1) records of customer complaints, (2) warranty and post-warranty claims, and (3) pre- and post-sale testing, but made no substantive design modifications to eliminate the defect, and did not recall the Products, despite knowing the defect persists today.

**D.     <u>Defendant Fails to Disclose the Latent Safety Defect to Consumers at the Point of Sale</u>**

45.     Consumers cannot reasonably know about or discover the dangerous nature of the Products at the point of sale. Although images and a description of the string trimmers are contained on product packaging and online listings, consumers do not realize that there is a material and unreasonable risk of projectile string causing painful laceration and potentially eye loss through regular and ordinary use.

46.     Consumers reasonably expect that Defendant—who has far greater expertise in product safety and designing power tools—would not market an unsafe product. For lay consumers inexperienced in product design, the Products are not obviously unsafe in appearance.

47.     Defendant advertises the Products on its packaging as:

     a.  "Automatic Feed Spool"

     b.  "AUTO FEED [¶] No Bumping Required"

48.   Defendant similarly advertises the Products on retailer websites as:

a.   "String Trimmer with Auto Feed, Electric, 6.5-Amp";

b.   "Automatic Feed Spool (AFS) technology of the edger/trimmer eliminates bumping for hassle-free line feeding that helps you work without interruptions."

49.   These representations are misleading because the "Automatic Feed Spool" or "Auto Feed" is defectively designed and results in an unreasonable risk of physical injury with ordinary use. Defendant omitted this information on packaging, labeling, and advertising.

50.   Defendant further actively concealed the defect and safety risk by (1) responding to customer complaints with requests for further information but without acknowledging the defective nature of the Products, and (2) replacing defective products with the same defective product until the two-year warranty period expired.

**E.   Defendant's Duty to Disclose the Defect**

51.   <u>Superior Knowledge</u>: As described above, Defendant is experienced in the design and manufacture of power tools such as the Products. As an experienced manufacturer, Defendant conducts tests, including pre-sale testing, to verify the tools it sells are free from defects and align with Defendant's specifications and intended use. Defendant also receives, monitors, and aggregates consumer complaints regarding the defect.  A reasonable consumer would not be on notice of the defect and does not have access to the granular data in Defendant's possession.

52.  <u>Active Concealment</u>: Defendant actively concealed the Defect. As described above, Defendant actively concealed the defect from Plaintiff and Class members. In response to consumer complaints within the warranty period regarding the defect, Defendant replaced the defective Products with the same defective Products to ensure that the defect will manifest again outside of the warranty period, or denied the warranty claim entirety. Defendant also responded to negative reviews about the defect without publicly acknowledging the defect, and instead merely directed the reviewer to contact Defendant for more information.

53.  <u>Partial Representations</u>: As described above, Defendant represents on labeling that each Product functions as a string trimmer with auto-feed capability. The same and substantively identical representations are made on third-party retailer websites (and Defendant's website), which were written by Defendant and provided to retailers by Defendant. Yet Defendant fails to disclose that the defect is substantially certain to manifest within the warranty period, let alone shortly after expiration of the warranty period.  By disclosing some beneficial attributes about the Products and describing its performance, Defendant is obligated to disclose material defects that negatively affect the useful life of the Products.

54.  The defect affects the central functionality of the Products in that it renders the Products inoperable without unreasonable risk of physical injury.  For the same reasons, the Products present an unreasonable safety hazard.

55.  Defendant could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers.  Had Defendant disclosed the defect in this manner, consumers would have been aware of it.

## F.  **Plaintiff Graham Waldo**

56.   On March 31, 2023, Plaintiff Graham Waldo purchased a Black & Decker string trimmer model BESTA510 from a Home Depot store in San Pedro, California.  Plaintiff paid $99.00 plus tax for the Product.

57.     Before purchasing the Product, Plaintiff viewed the external packaging of the product and saw that it was labeled as a corded string trimmer with an "Automatic Feed Spool," "Auto Feed," and "No Bumping Required."

58.     As a reasonable consumer, he believed that information regarding critical safety defects, like the substantial risk of projectile string because too much spool was automatically advanced, resulting in deep laceration to body and face under normal use, would have been prominently disclosed by the manufacturer on the packaging. Because no such risk was disclosed, let alone prominently on the front panel, he understood label statements and accompanying images as representations made by Defendant that the Product was safe under ordinary use. Plaintiff relied on Defendant's omissions in purchasing the Product.

59.     After using the Product as intended, Plaintiff suffered a painful laceration to his lower leg caused by exceed string automatically released from the spool.  The laceration was deep and caused bleeding.

60.     Plaintiff has stopped using the Product because it is worthless, and Plaintiff is concerned that the Product is unsafe to use.

61.     Had Plaintiff known or otherwise been made aware of the defect in the Product, he would not have purchased it or would have paid significantly less for it. At a minimum, Plaintiff paid a price premium for the Product based on Defendant's omission and concealment of the safety defect.

62.     Plaintiff would purchase another substantially similar string trimmer from Defendant in the future if the product was redesigned to make it safe under ordinary use. Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on any representations or omissions of safety and the comprehensiveness of warnings in the future and, thus, will not be able to purchase such a string trimmer manufactured by Defendant.

**TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

63.     Any applicable statutes of limitation have been tolled by the discovery

doctrine and Defendant's knowing and active concealment of the defect.

64.     Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the defect and could not reasonably discover the defect or Defendant's deception with respect to the Defect.

65.     Prior to purchasing and using the Products, Plaintiff and Class members had no reasonable way of knowing about the Products' uniformly defective design resulting in unreasonable laceration risk through ordinary use.  Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

66.     Further, by failing to provide immediate notice of the risks of laceration associated with normal use of the Products, by responding to negative reviews about the defect without publicly acknowledging the defect, and by replacing Products under warranty with the same defective Products, Defendant actively concealed the defect from Plaintiff and Class members.

67.     Plaintiff did not learn about the safety defect and risk of laceration under normal use until he purchased and used the Product, and suffered a laceration, in 2023.

68.     Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

69.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's active concealment.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on behalf of himself and the following Class pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

> All persons in California who purchased the Products during the Class Period other than for resale.

71.     Excluded from the Class are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

72.     The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.

73.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

74.     **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

75.     **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual

questions include, but are not limited to, the following:

    a.  Whether the Products contain the defect alleged herein;

    b.  Whether Defendant failed to appropriately warn Class Members of the damage that could result from the use of the Products;

    c.  Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Class;

    d.  Whether Defendant promoted the Products with misleading statements of fact and material omissions;

    e.  Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Products are deceptive, unfair, or misleading;

    f.  Whether Defendant's actions and omissions violate California law;

    g.  Whether Defendant's conduct violates public policy;

    h.  Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

    i.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Products;

    j.  Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

    k.  Whether Plaintiff and members of the putative Class are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

    76.    Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive relief appropriate concerning the putative Class as a whole. In particular, Defendant manufactured, marketed,

advertised, distributed, and sold the Products that are deceptively misrepresented by omission as being safe under normal use when they are not.

77.     **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members each purchased and used the Products, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the Products being safe under normal use when they are not.

78.     **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Classes.

79.     **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

80.     **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Class, thereby making

appropriate final injunctive relief, as described below, concerning the members of the Class as a whole.

81.    **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

     a.  The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

     b.  Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

     c.  The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

     d.  Individual joinder of all members of the Class is impracticable;

     e.  Absent a class action, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

     f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class can seek redress for the harm caused by Defendant.

82.    In the alternative, the Class may be certified for the following reasons:

     a.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant;

     b.  Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the

1
2

ability of other putative Class Members to protect their interests; and

3
4
5

c. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief concerning the putative Classes as a whole.

6

## INADEQUACY OF LEGAL REMEDIES

7
8
9
10
11
12
13
14
15
16
17
18
19

83.     In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

20
21
22
23
24
25

84.     Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred.").

26
27
28

85.     Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages

**CLASS ACTION COMPLAINT**

are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Cal. Commercial Code § 2314
### (On Behalf of the California Class)

86.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

87.   Defendant manufactured and distributed Products for sale to Plaintiff and Class members.

88.   Defendant impliedly warranted to Plaintiff and Class members that their Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

89.   As alleged herein, Defendant breached the implied warranty of merchantability because the Products suffer from a safety defect.  The safety defect also affects the Products' central functional.  The Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

90.   Due to the safety defect, Plaintiff and Class members cannot operate their Products as intended, substantially free from defects.  The Products do not provide safe and reliable trimming of vegetation and pose a serious risk of injury, including deep lacerations to the body and face.  As a result, Plaintiff and Class members cannot use their Products for the purposes for which they purchased them.

91.   Privity of contract is not required here because Plaintiff and Class members were each intended third-party beneficiaries of the Products sold through independent retailers. The retailers were not intended to be the ultimate consumers of

the Products and have no rights under the implied warranty provided with the Products.

92.     Plaintiff and Class members were the intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically, of Defendant's implied warranties. The retailers were not intended to be the ultimate consumers of the devices and have no rights under the warranty agreements; the warranty agreements were designed for and intended to benefit the consumers only.

93.     Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class members have been injured in an amount to be proven at trial.

<u>**COUNT II**</u>
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF IMPLIED WARRANTY**
**Cal. Civ. Code §§ 1791.1 & 1792**
**(On Behalf of the California Class)**

94.     Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

95.     Plaintiff brings this claim on behalf of himself and behalf of the California Class against Defendant.

96.     Plaintiff and Class members who purchased the Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

97.     The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

98.     Defendant is a "manufacturer" of the Products within the meaning of Cal. Civ. Code § 1791(j).

**CLASS ACTION COMPLAINT**

99.   Defendant impliedly warranted to Plaintiff and Class Members that the Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

100.   However, the Products do not have the quality that a reasonable purchaser would expect.

101.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; … [and] (4) conform to the promises or affirmations of fact made on the container or label."

102.   The Products would not pass without objection in the trade because of the safety defect alleged herein. As explained above, the Products have a dangerously defective auto feeding spool and sensor, posing a significant safety hazard for consumers.  As a result of the defect, too much spool can be advanced, and pieces of trimmer string can come loose during use and become airborne projectiles, posing a laceration hazard to users as well as bystanders. Such a design defect is extraordinarily dangerous and has rendered the Products unsuitable for their principal and intended purpose.

103.   For the same reasons, the Products are not fit for the ordinary purpose they are used—trimming—because of the safety defect as alleged herein.

104.   The safety defect in the Products is latent.  Though the Products appear operable when new, the safety defect existed at the time of sale and throughout the one year under the Song-Beverly Act.  Accordingly, any subsequent discovery of the safety defect by Class members beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

105.   Further, despite due diligence, Plaintiff and Class members could not have discovered the safety defect before the manifestation of its symptoms in the form

of physical injury and projectile trimmer string.  Those Class members whose claims would have otherwise expired allege that the discovery rule and doctrine of fraudulent concealment tolls them.

106.   Defendant breached the implied warranty of merchantability by manufacturing and selling Products containing the safety defect. The existence of the defect has caused Plaintiff and the other Class members not to receive the benefit of their bargain and have caused Products to depreciate.

107.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other California members. Plaintiff and the other California Class members have been damaged as a result of the diminished value of the Products.

108.   Plaintiff and the other California Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Products or the overpayment or diminution in value of their Products.

109.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## <u>COUNT III</u>
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(On Behalf of the California Class)**

110.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

111.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

112.   Defendant's acts and omissions as alleged herein constitute business acts and practices.

**CLASS ACTION COMPLAINT**

113.     Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

       a.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

       b.     Implied warranty of merchantability under the Commercial Code and Song-Beverly Act.

114.     Unfair: Defendant's conduct concerning the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Distributing materially unsafe string trimmers has no public utility at all.

115.     Any countervailing benefits to consumers or competition did not outweigh this injury. Selling products unsafe and unfit for their intended purposes only injures healthy competition and harms consumers. Defendant also minimizes the scope of the defect despite knowing the Products are unreasonably dangerous, made repairs and replacements during the warranty period that caused instances of failure and unbeknownst to consumers did not provide a permanent fix, and knowingly sold defective products in hopes of forcing consumers to purchase replacement products.

116.     Defendant's conduct concerning the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.

117.     Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

118.     As set forth herein, Defendant engaged in deceptive acts by knowingly

omitting from Plaintiff and Class members that the Products suffer from the safety defect (and the costs, risks, and diminished value of the Products as a result). Defendant knew that the Products were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

119.   Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Products because:

     a.   Defendant was in a superior position to know the true state of facts about the defect and associated repair costs;

     b.   Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Products had a safety defect before purchase;

     c.   Defendant knew that Plaintiff and Class members could not reasonably have been expected to learn or discover the defect and the associated repair costs;

     d.   Defendant made partial representations regarding the attributes and benefits of the Products on packaging and labeling while deceptively omitting the existence of the defect; and

     e.   Defendant actively concealed the defect and the associated repair costs by responding to negative reviews without disclosing the defect, asserting that the Products were not defective, and replacing defectively designed Products with identical defectively designed Products.

120.   Defendant could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the defect in this manner, Plaintiff and reasonable consumers would have been aware of it.

121.   The facts concealed or not disclosed by Defendant to Plaintiff and Class members are material in that a reasonable consumer would have considered

them important in deciding whether to purchase Defendant's Products or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Products, they would not have purchased them or paid less for them.

122.    Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary purchasers.

123.    Plaintiff and Class Members will likely continue to be damaged by Defendant's deceptive trade practices because Defendant continues disseminating misleading information on the Products' packaging and online retail listings. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

124.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

125.    Under Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring that Defendant correct its misleading labeling and commence a corrective advertising campaign.

126.    Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Class)**

127.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

128.    The CLRA prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

**CLASS ACTION COMPLAINT**

129.    Defendant's omissions were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

        a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;

        b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

        d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

130.    As set forth herein, Defendant engaged in deceptive acts by knowingly omitting from Plaintiff and Class members that the Products suffer from the safety defect (and the costs, risks, and diminished value of the Products as a result). Defendant knew that the Products were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

131.    Defendant was under a duty to Plaintiff and the Class members to disclose the defective nature of the Products because:

        a. Defendant was in a superior position to know the true state of facts about the defect and associated repair costs;

        b. Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Products had a safety defect before purchase;

        c. Defendant knew that Plaintiff and Class members could not reasonably have been expected to learn or discover the defect and the associated repair costs;

    d.  Defendant made partial representations regarding the attributes and benefits of the Products on packaging and labeling while deceptively omitting the existence of the defect; and

    e.  Defendant actively concealed the defect and the associated repair costs by responding to negative reviews without disclosing the defect, asserting that the Products were not defective, and replacing defectively designed Products with identical defectively designed Products.

132.    Defendant could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendant disclosed the defect in this manner, Plaintiff and reasonable consumers would have been aware of it.

133.    The facts concealed or not disclosed by Defendant to Plaintiff and Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendant's Products or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Products, they would not have purchased them or paid less for them.

134.    Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary purchasers.

135.    Plaintiff and Class Members will likely continue to be damaged by Defendant's deceptive trade practices because Defendant continues disseminating misleading information on the Products' packaging and online retail listings. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

136.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

137.    On August 20, 2023, a CLRA demand letter was sent to Defendant pursuant to Cal. Civ. Code § 1782. This letter provided notice of Defendant's

violation of the CLRA and demanded that Defendant correct the unlawful and deceptive practices alleged herein. Defendant did not offer any remedy to Plaintiff and each Class member. Accordingly, Plaintiff seeks all monetary relief available under the CLRA.

138.    Pursuant to California Civil Code § 1780, Plaintiff also seeks money damages, injunctive relief, reasonable attorney fees and costs, punitive damages, and any other relief the Court deems proper.

### COUNT V
### Unjust Enrichment/Quasi-Contract
### (On Behalf of the California Class)

139.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

140.    Plaintiff and putative Class members conferred a benefit on Defendant when they purchased the Products.

141.    Defendant knew or should have known that the payments rendered by Plaintiff and the Class were given with the expectation that the Products would have the qualities, characteristics, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

142.    By its wrongful acts and omissions described herein, including selling the Products which contain the safety defect described in detail above and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class members.

143.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

144.    Defendant has profited from its unlawful, unfair, misleading, and

**CLASS ACTION COMPLAINT**

deceptive practices at the expense of Plaintiff and putative Class members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Products.

145.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the defective Products, and Defendant misrepresented by omission the nature of the Products and knowingly marketed and promoted dangerous and defective Products, which caused injuries to Plaintiff and the Class because they would not have purchased the Products based on the exact representations if the true facts concerning the Products had been known.

146.    Plaintiff and putative Class members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

147.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

**CLASS ACTION COMPLAINT**

B.  Directing that Defendant bear the costs of any notice sent to the Class(es);

C.  Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products or order Defendant to make full restitution to Plaintiff and the members of the Class(es).

D.  Awarding money damages;

E.  Awarding restitution and other appropriate equitable relief;

F.  Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

G.  Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Products to anyone who may still be at risk of buying and using the Products;

H.  Ordering a jury trial and damages according to proof;

I.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.  Awarding prejudgment interest, and punitive damages as permitted by law; and

L.  Ordering such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

**CLASS ACTION COMPLAINT**

Dated: October 5, 2023                    Respectfully submitted,

                                          */s/ Alexander E. Wolf*
                                          Alexander E. Wolf (SBN 299775)
                                          **MILBERG COLEMAN BRYSON**
                                          **PHILLIPS GROSSMAN**
                                          awolf@milberg.com
                                          280 South Beverly Drive, Penthouse
                                          Beverly Hills, California 90212
                                          Tel: 872.365.7060

                                          *Attorneys for Plaintiff and the putative Class*

**CLASS ACTION COMPLAINT**